**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAJEON FRANKLIN,

      Petitioner,                 Civil No. 2:20-CV-12746
                                   HONORABLE ARTHUR J. TARNOW
v.                               UNITED STATES DISTRICT JUDGE

WILLIS CHAPMAN,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY, AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Dajeon Franklin, ("Petitioner"), confined at the Macomb Correctional

Facility in New Haven, Michigan, filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for

first-degree felony murder, M.C.L.A. 750.316(1)(b), two counts of first-degree

home invasion, M.C.L.A. 750.110a(2), conspiracy to commit second-degree

home invasion, M.C.L.A. 750.110a(3), and possession of a firearm during the

commission of a felony, [felony-firearm], M.C.L.A. 750.227b. For the reasons that

follow, the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

### I.  Background

      Petitioner was convicted following a jury trial in the Washtenaw County

Circuit Court.  "The facts as recited by the Michigan Court of Appeals are

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel*

*v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  The facts are as follows:

> A jury convicted defendant of first-degree felony murder, two counts of first-degree home invasion, conspiracy to commit second-degree home invasion, and possession of a firearm during the commission of a felony (felony-firearm), for his role in a robbery spree and the murder of University of Michigan medical student, Paul DeWolf.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I. BACKGROUND

On the night of July 23, 2013, defendant, Joei Jordan, and Shaquille Jones drove from Ypsilanti to an Ann Arbor neighborhood where the homes were divided into smaller units for rent by students. The trio planned to break into houses to steal small, valuable items. The men entered 210 North Ingalls Street through an open window and stole a MacBook laptop and a purse. They then entered the neighboring home, 220 North Ingalls Street, a medical society house that rented individual bedrooms to students. While in the basement stealing a video game system, the men heard one of the bedroom doors open and the resident go inside. Despite knowing that someone was present, defendant and his accomplices decided to enter that bedroom.

When the trio entered the dark bedroom, DeWolf slowly stood up from his bed and repeatedly asked, "Who is there?" No one responded. Defendant moved toward DeWolf holding a handgun in one hand aiming it at the victim. DeWolf reached for defendant or the gun, and defendant pulled the gun back. Defendant then hit DeWolf with an overhead swing of the gun and the gun discharged. Jones, Jordan, and defendant ran out of the residence. Defendant told Jones and Jordan that he shot DeWolf because he thought DeWolf had a knife or was grabbing for the gun.

DeWolf died from his gunshot wound. The medical evidence supported that the gun fired while it was sweeping downward. The weapon was in close range to DeWolf's clavicle and the bullet caused severe damage as it travelled downward through his torso and out his middle back. Defendant and his accomplices were apprehended after officers traced the stolen items they sold and secured fingerprint

2

evidence from the two robbery scenes. Officers also discovered dots of DeWolf's blood on the shoes worn by defendant that night.

*People v. Franklin*, No. 325551, 2016 WL 1391305, at *1 (Mich. Ct. App. Apr. 7, 2016)(internal citations omitted).

Petitioner's conviction was affirmed. *Id., lv. den*. 500 Mich. 933, 889 N.W.2d 269 (2017).

Petitioner filed a post-conviction motion for relief from judgment. The motion was denied. *People v. Franklin,* No. 14-181-FC (Washtenaw County Circuit Court, Nov. 19, 2018). The Michigan appellate courts denied petitioner leave to appeal. *People v. Franklin,* No. 347139 (Mich. Ct. App. June 6, 2019); *lv. den*. 505 Mich. 975, 937 N.W.2d 651 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Defendant was denied his due process right when his arraignment was unnecessarily delayed for 3 months after his arrest.

II. Defendant was denied his right to due process and right to be free from unreasonable search(s) and seizure(s) when information obtained from the illegal search of petitioner's cellphone was admitted and used as evidence against him during trial.

III. Defendant was denied his right to due process and right to confront the witness against him when audio and transcript testimony was admitted into evidence when the witness was incarcerated by the court's authority and was available to testify at his trial.

IV. Defendant was denied his right to due process and right to effective assistance of counsel when counsel's representation fell below an objective standard of reasonableness, failing to conduct reasonable investigations, to file motion to dismiss, to object to prosecutor's misconduct and to compel the prosecutor to produce his accuser(s).

3

V. Defendant was denied his right to due process and right to a fair trial by admitting autopsy and crime scene photographs of deceased victim, where the prejudicial effect unfairly outweighed their probative value.

VI. Defendant was denied his right to due process and right to effective assistance of appellate counsel.

VII. Defendant was denied his due process right to a fair trial by the admission of substantially and unfairly prejudicial "other acts" evidence that he had a gun on various occasions between 2009 and the summer of 2013, where there was no evidence tying the "other acts" to the firearm used in the instant offense, such evidence had no probative value, was used for prohibited purposes, and was unfairly prejudicial to defendant.

VIII. The evidence of malice was insufficient: defendant's conviction represents a denial of due process and must be vacated, or, in the alternative, reduced.

IX. Defendant was denied his right to due process and right to a fair trial by prosecution vouching for the credibility of the "unavailable" witness during closing and rebuttal arguments.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Discussion

### A. The procedural default issue.

5

Respondent urges this Court to procedurally default petitioner's first through fifth claims and his ninth claim because petitioner raised them for the first time in his post-conviction motion and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise them on his appeal of right.

Petitioner argues in his sixth claim that appellate counsel was ineffective for failing to raise these claims on his appeal of right.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).  Petitioner could not procedurally default his ineffective assistance of appellate counsel claim because post-conviction review was the first opportunity he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Respondent also argues that a portion of petitioner's seventh claim alleging the improper admission of other acts evidence is defaulted because petitioner failed to object at trial.  Because the same legal analysis applies to both the preserved and unpreserved 404(b) claims, it would be easier to simply address the merits of the unpreserved claim.

### B. Claims # 1 and # 2.  The Fourth Amendment claims.

Petitioner raises two Fourth Amendment challenges in his first and second claims.

Petitioner in his first claim argues that the case should be dismissed because of a three month delay in his arraignment following his arrest.  In his second claim, petitioner argues that his right to be free from an unreasonable search and seizure was violated when information obtained from an illegal search of petitioner's cell phone was admitted into evidence.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).  Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).  "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d

7

51, 57 (3rd Cir. 1986)).  Thus, an argument by a habeas petitioner that is

"directed solely at the correctness of the state court decision [on a Fourth

Amendment claim] 'goes not to the fullness and fairness of his opportunity to

litigate the claim[s], but to the correctness of the state court resolution, an issue

which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13

(quoting *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994)).

 Petitioner presented his Fourth Amendment claims in his post-conviction

motion for relief from judgment before the trial court and the Michigan appellate

courts. *People v. Franklin,* No. 14-181-FC, *2 (Washtenaw County Circuit Court,

Nov. 19, 2018)(ECF No. 15-17, PageID.596).  Because petitioner was able to

raise his delay in arraignment and illegal search claims in his post-conviction

motion, petitioner had a full and fair opportunity to raise his Fourth Amendment

claims in the state courts and is thus not entitled to habeas relief. See *Hurick v.

Woods*, 672 F. App'x 520, 535 (6th Cir. 2016).

 **C. Claim # 3. Unavailable witness/Confrontation Clause claims.**

 Petitioner in his third claim argues that the trial court erred in declaring co-

defendant Shaquille Jones unavailable at trial, so as to allow his preliminary

examination testimony to be read to the jury.  Petitioner argues that the

admission of Mr. Jones' preliminary examination testimony violated his Sixth

Amendment right to confrontation.  Petitioner contends that the police and

prosecutor failed to act with due diligence in securing Mr. Jones' attendance at

trial, thus, the judge erred in finding Mr. Jones unavailable to testify at trial and by allowing his preliminary examination testimony to be read into evidence.

Petitioner's trial counsel stipulated to the admission of Mr. Jones' preliminary examination testimony at trial. (ECF No. 15-9, PageID.319). Counsel's stipulation waives review of the claim.

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34). *See also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012)("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors").  The right to confrontation may be waived, including by a failure to object to the "offending evidence." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314, n. 3 (2009). Because defense counsel stipulated to the admission of this evidence, petitioner has waived review of his Confrontation Clause claim. *See United States v. Chun Ya Cheung*, 350 F. App'x 19, 21-22 (6th Cir. 2009).  Moreover, a defendant in a criminal case cannot complain of error which he himself has invited. *Shields v. United States*, 273 U.S. 583, 586 (1927).  When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001).  By agreeing to the

9

admission of Mr. Jones' preliminary examination testimony, petitioner is precluded from seeking habeas relief on this claim.

Moreover, petitioner failed to show that the trial court erred in finding Mr. Jones to be unavailable to testify, so as to allow for the admission of his preliminary examination testimony. Mr. Jones had originally pleaded guilty to lesser charges with an agreement to testify against petitioner. Mr. Jones had testified against him at the preliminary examination. Immediately prior to petitioner's trial, the prosecutor moved to withdraw Mr. Jones' guilty plea because Mr. Jones no longer wanted to cooperate with the prosecutor and testify against petitioner. Mr. Jones' attorney had, in fact, contacted the prosecutor's office and informed them that Mr. Jones would not testify against petitioner. (ECF No. 15-18, PageID.622-623). The judge had granted the motion to withdraw Mr. Jones' guilty plea after Mr. Jones informed the judge that he would not cooperate with the prosecution and testify against petitioner. In light of the fact that Mr. Jones' plea had been withdrawn, the judge granted the prosecutor's motion to use Mr. Jones' preliminary examination testimony in *lieu* of his live testimony. (ECF No. 15-7, PageID.240).

An exception to the confrontation requirement exists where a witness is unavailable and gave testimony, which was subject to cross-examination, at previous judicial proceedings against the same defendant. However, this exception does not apply "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719,

10

724-25 (1968).  When prosecutors seek to admit a non-testifying witness'

preliminary hearing testimony, the Confrontation Clause requires two things: first,

the prosecution must establish that the declarant is "unavailable" by showing that

prosecutorial authorities have made a good-faith effort to obtain the declarant's

presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the

prosecution must demonstrate that the defendant had an adequate opportunity to

cross-examine the declarant at the preliminary examination. *See Pillette v.*

*Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); *rev'd on other grds,* 408

F. App'x 873 (6th Cir. 2010)(citing *McCandless v. Vaughn*, 172 F.3d 255, 265

(3rd Cir. 1999)).  The lengths to which the prosecution must go to produce a

witness, such that the admission of the witness' prior, confronted testimony at the

subsequent trial does not violate the Confrontation Clause, is a question of

reasonableness. *Hardy v. Cross,* 565 U.S. 65, 70 (2011)(quoting *Ohio v.*

*Roberts*, 448 U.S. 56, 74 (1980)).  The Supreme Court noted that "when a

witness disappears before trial, it is always possible to think of additional steps

that the prosecution might have taken to secure the witness' presence, but the

Sixth Amendment does not require the prosecution to exhaust every avenue of

inquiry, no matter how unpromising." *Id.*, at 71-72.  Significantly, "the deferential

standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court

to overturn a state court's decision on the question of unavailability merely

because the federal court identifies additional steps that might have been taken."

*Id*. at 72.

11

Mr. Jones was unavailable at trial because he had withdrawn his plea deal just before trial and thus had his own Fifth Amendment right not to testify.  This is a recognized reason for unavailability. *See United States v. Jones*, 124 F.3d 781, 786 (6th Cir. 1997)(stating that the declarant "was unavailable as he refused to testify, invoking his Fifth Amendment right against self-incrimination"); *Mayes v. Sowders*, 621 F.2d 850, 856 (6th Cir. 1980)(stating that "[a] witness is not available for full and effective cross-examination when he or she refuses to testify.").

In addition, Mr. Jones' former preliminary examination testimony bore adequate indicia of reliability because it was made under oath, petitioner and his counsel were present, and the witness was subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Pillette,* 630 F. Supp. 2d at 804; *Eastham v. Johnson,* 338 F. Supp. 1278, 1280 (E.D. Mich. 1972).  The admission of the preliminary examination testimony at petitioner's trial did not violate his Sixth Amendment right to confrontation. *See Glenn v. Dallman,* 635 F.2d 1183, 1187 (6th Cir. 1980); *Havey v. Kropp,* 458 F.2d 1054, 1057 (6th Cir. 1972); *Pillette,* 630 F. Supp. 2d at 804-05.

### D. Claim # 4. The ineffective assistance of trial counsel claims.

Petitioner in his fourth claim alleges he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First,

the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner first alleges that trial counsel was ineffective for failing to bring Fourth Amendment challenges based on the three month delay in arraignment and the alleged illegal search of his cellphone.

13

To prove that counsel's failure to litigate a Fourth Amendment claim competently as the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Mack v. Jones,* 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008).

Petitioner claims that counsel should have moved to dismiss the charges based on a three month delay between his arrest and his actual arraignment on the warrant.  Petitioner alleges he was arrested on November 6, 2013, but not arraigned until February 10, 2014.  Petitioner's claim is based on the United States Supreme Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).  *Riverside* was a civil rights case brought under 42 U.S.C. § 1983. The Supreme Court held that the federal constitution requires that a defendant be given a reasonably prompt probable cause determination, such as arraignment, following his arrest, and that a delay in arraignment greater than 48 hours after arrest is presumptively unreasonable. *See id.* at 55-58.

Petitioner raised this claim in his post-conviction motion.  The judge rejected the claim, finding that there was no undue delay in arraignment because petitioner was initially arrested in 2013 on a bench warrant in an earlier criminal case and not on these charges. (ECF No. 15-17, PageID.597).  The judge's findings are supported by the arrest warrant and complaint, which was signed on

14

February 10, 2014, the date of petitioner's arraignment. (ECF No. 15-22, PageID.970-971).  Petitioner failed to show that he was denied a prompt arraignment on these charges.

Assuming there were any delays in his arraignment, petitioner failed to show that counsel was ineffective in failing to file a motion to suppress or a motion to dismiss based on the allegedly untimely arraignment.  Petitioner cannot show a reasonable probability that a motion to suppress any evidence or to dismiss the case on this basis would have been successful.  Because *McLaughlin* was a civil rights action, it did not consider the effect of pre-arraignment delay on the admissibility of evidence in a criminal case. *See e.g. Davis v. Jones,* 306 F. App'x 232, 236 (6th Cir. 2009).  Nor does the holding in *McLaughlin* support petitioner's argument that any pre-arraignment delay would have resulted in the dismissal of the charges. *Meador v. Bauman*, No. 16-2557, 2017 WL 5201907, at *2 (6th Cir. June 5, 2017)("But *McLaughlin* was a civil rights action, not a criminal case, and it does not support [petitioner's] argument in his COA [certificate of appealability] application that the delay should have resulted in dismissal of the charges against him").  The United States Supreme Court, in fact, explicitly declined to fashion an appropriate remedy for a *McLaughlin* violation. S*ee Powell v. Nevada*, 511 U.S. 79, 84 (1994).  The Michigan courts likewise held that suppression of evidence is not *per se* required for a *McLaughlin* violation. *See People v. Manning*, 243 Mich. App. 615, 636-44; 624 N.W.2d 746 (2000).  In light of these cases, petitioner failed to show that the

15

charges would have been dismissed or the evidence suppressed had counsel raised a challenge to the alleged pre-arraignment delay.

Petitioner also alleges that trial counsel should have moved to suppress evidence taken from his cell phone because the search warrant only allowed the police to obtain all data assigned to a 695 cellphone number but the police obtained information from a second cellphone number, 972, that was not included in the search warrant. Petitioner claims that the 972 cellphone number was only activated after the 695 number was cancelled.

Petitioner failed to provide a copy of the search warrant with his petition, brief in support of the petition, or his reply brief. (ECF Nos. 1, 2, 16). Nor did petitioner provide a copy of the warrant with his motion for relief from judgment and two supplemental motions for relief from judgment. (ECF Nos. 15-14, 15-15, 15-16). Without a copy of the search warrant, this Court is unable to determine the scope of the search warrant and what cellphones, if any, were authorized to be searched. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Without any evidence establishing that the search of petitioner's cellphone exceeded the scope of the search warrant, petitioner is not entitled to relief on this claim.

Petitioner next claims that trial counsel was ineffective for stipulating to the admission of Mr. Jones' preliminary examination testimony. The judge in this case had previously ruled that the preliminary examination testimony was

16

admissible because Mr. Jones was unavailable to testify at trial after his guilty plea was revoked.  This Court determined that the judge reasonably determined that Mr. Jones was unavailable to testify at trial, most likely because he would have invoked his Fifth Amendment right not to testify.  Petitioner does not suggest any arguments that his counsel could have made instead of stipulating to Mr. Jones' unavailability that would have compelled him to appear in court and testify at petitioner's trial.  Petitioner cannot show that he was prejudiced by counsel's stipulation. *Bell v. Woods*, No. 2:10-CV-13467, 2014 WL 11206412, at *24 (E.D. Mich. Apr. 15, 2014), *report and recommendation adopted sub nom. Bell v. Bergh*, No. 10-13467, 2016 WL 1223349 (E.D. Mich. Mar. 29, 2016).

Petitioner next alleges that his counsel was ineffective for failing to interview the prosecution's expert, Dr. Jeffrey Jentzen, prior to trial and did not secure a defense expert to contradict Dr. Jentzen, specifically regarding the time of death in an effort to comport with petitioner's alibi. (ECF No. 2, PageID.49–50).

Defense counsel cross-examined Dr. Jentzen on the issue involving the time of death.  It was, in fact, counsel's first question on cross-examination.  The line of questioning persisted for several transcript pages. (ECF No. 15-9, PageID.345-46). Defense counsel also discussed the issue of the time of death in closing argument, contending that Franklin could not have shot the victim because he was constantly sending and receiving text messages at that time. (ECF No. 15-11, PageID.446).

17

Petitioner has not established that his counsel was ineffective for failing to conduct a pre-trial interview of Dr. Jentzen, in the absence of any evidence that Dr. Jentzen was willing to talk with defense counsel other than from the witness stand or that counsel's cross-examination of this witness was somehow inadequate. *See Daniel v. Palmer*, 719 F. Supp. 2d 817, 829 (E.D. Mich. 2010), *rev'd on other grds sub nom. Daniel v. Curtin*, 499 F. App'x 400 (6th Cir. 2012).

Petitioner also claims that trial counsel should have called an expert witness to challenge Dr. Jentzen's findings as to the time of death.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006).  Petitioner has offered no evidence to this Court that there is an expert who would have impeached Dr. Jentzen's testimony concerning the likely time of death.

Moreover, although trial counsel did not present an expert to challenge Dr. Jentzen's opinion as to the time of the victim's death, trial counsel extensively cross-examined Dr. Jentzen about his findings and did get him to make several admissions that there was a wide range of time in which the murder took place. Counsel was able to get Dr. Jentzen to admit that a ten degree difference in room temperature could have affected when rigor mortis set in the victim's body. Rigor mortis begins around twelve hours after death and usually goes on for twenty four to thirty six hours.  Doctor Jentzen noted that the time of death could also be determined by a murder victim's body temperature, although he further

18

admitted that it was not "an exact science."  Dr. Jentzen indicated that the time of death could also be determined by livor mortis, but that there was a range of time with which this could take place.

The Supreme Court has noted that: "[I]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter,* 562 U.S. at 111.  Defense counsel's decision to cross-examine Dr. Jentzen to challenge his findings, instead of calling an expert witness for the defense to challenge his testimony, was a reasonable trial strategy that defeats petitioner's ineffective assistance of trial counsel claim. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005); *see also Jackson v. McQuiggin,* 553 F. App'x 575, 580-82 (6th Cir. 2014); *Stevens v. U.S.,* 298 F. Supp. 2d 657, 660-61 (E.D. Mich. 2004).

Petitioner next contends that trial counsel was ineffective for failing to object to the admission of a photograph of him holding a gun in 2008, which the Michigan Court of Appeals found inadmissible on direct appeal. *Franklin*, 2016 WL 1391305, at *4.  The Michigan Court of Appeals, however, found the admission of the picture harmless in light of the additional evidence of guilt. *Id.* at *5.  "The prejudice prong of the ineffective assistance analysis subsumes …harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Because the Michigan Court of Appeals determined that admission of this evidence was harmless error, petitioner cannot satisfy *Strickland's* prejudice requirement. *See e.g. Bell v. Hurley,* 97 F. App'x 11, 17 (6th Cir. 2004).

19

Lastly, petitioner contends that his counsel should have rebutted the prosecution's theory that the fatal shot to the victim came from a .40 caliber bullet, both through more effective cross-examination and by calling a defense ballistics expert. (ECF No. 2, PageID.53-54).

This claim may be unexhausted, however, as petitioner did not raise it as part of his ineffective-assistance of counsel claim in his motion for relief from judgment. Petitioner cannot exhaust this claim because he already filed one motion for relief from judgment and the state court rules prohibits a second motion absent one of two narrow exceptions, Mich. Ct. R. 6.502(G).

In any event, petitioner's ballistics claim is meritless. As the Michigan Court of Appeals found based on the trial record, there was at least a strong inference, if not direct evidence, of the gun and bullet type petitioner used to shoot the victim:

> Jones testified that defendant carried a black, semiautomatic handgun on the night of the offense and that defendant used this gun to shoot DeWolf. The text message exchange evidenced that before the night of the current offense, defendant intended to (and apparently did) purchase a gun matching Jones's description of the murder weapon. The text message exchange noted that the weapon contained hollow point bullets, and investigating officers found a hollow point bullet jacket fragment at the murder scene. Expert testimony established that the weapon in the text message photograph was of a type that could have fired the fatal bullet.

*Franklin*, 2016 WL 1391305, at *4.

The gun petitioner purchased was a .40 caliber semiautomatic handgun. (ECF No. 15-11, PageID.406). The ballistics evidence showed that the bullet

20

that killed the victim was a .38 caliber or greater depending on the size of the jacket that held the recovered bullet in this case. (ECF No. 15-10, PageID.396). The evidence in this case supported the argument that petitioner used the .40 caliber handgun he had purchased to kill the victim in this case.  Petitioner has not shown that he was prejudiced by counsel's failure to hire a ballistics expert and has failed to establish that counsel was ineffective. *Arevalo v. White*, No. 16-5948, 2017 WL 6760653, at *2 (6th Cir. July 18, 2017).

Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

**E.  Claims # 5 and # 7.  The evidentiary error claims.**

Petitioner in his fifth claim alleges that his due process rights were violated by the admission of photographs of the autopsy and crime scene that were more prejudicial than probative.  In his seventh claim, petitioner alleges that the prosecutor violated M.R.E. 404(b) by admitting other acts evidence.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

21

Petitioner's claim that the trial court admitted photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g. Franklin v. Bradshaw,* 695 F.3d 439, 456-57 (6th Cir. 2012)(state court's determination, that petitioner's right to fair trial was not denied by admission of 18 gruesome autopsy photographs of his victims that were shown to jurors on large projector screen during trial for aggravated arson, aggravated robbery, and aggravated murder, was not contrary to clearly established federal law).  In particular, the introduction of graphic or gruesome photographs of a murder victim does not entitle a petitioner to habeas relief where there is some legitimate evidentiary purpose for the photographs' admission. *See e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005)(upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso; the photos were highly probative of the prosecutor's claim that the petitioner beat the victim severely and meticulously dissected her body); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding acceptable the admission of multiple photographs of the victim used by the coroner to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002)(observing that "although the photographs were gruesome, they were highly probative").

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief.  The Sixth Circuit observed that "[t]he Supreme Court has never

22

held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (emphasis original).  Petitioner is not entitled to relief on his fifth claim.

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting improper character evidence or evidence of prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process).  The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).  Petitioner is not entitled to relief on his seventh claim.

23

**F.  Claim # 8.  The insufficiency of evidence claim.**

Petitioner contends that there was insufficient evidence of malice to support his felony murder conviction.  Petitioner raised this on his appeal of right. The Michigan Court of Appeals rejected the claim as follows:

> Viewing the evidence in the light most favorable to the prosecution, the jury could conclude beyond a reasonable doubt that defendant acted with malice. Defendant set out on his robbery spree armed with a loaded handgun. He entered a dark bedroom in the middle of the night knowing that someone was inside and that any robbery would likely involve an element of force. When confronted by the sleepy and surprised resident, defendant decided to raise his loaded handgun overhead and strike the victim with a downward swing. The jury could certainly view these events as constituting "wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm."

*People v. Franklin*, 2016 WL 1391305, at *2.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the requisite elements of the crime beyond a reasonable doubt. *Id.* at 318-19

(internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict,

the reviewing court gives circumstantial evidence the same weight as direct

evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

"Circumstantial evidence alone is sufficient to sustain a conviction and such

evidence need not remove every reasonable hypothesis except that of guilt."

*United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation

omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A

conviction may be sustained based on nothing more than circumstantial

evidence.").  Moreover, "[c]ircumstantial evidence is not only sufficient, but may

also be more certain, satisfying and persuasive than direct evidence." *Desert

Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific

R. Co.*, 352 U.S. 500, 508, n.17 (1957)); *see also Holland v. United States*, 348

U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from

testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt,

we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional

circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a

sufficiency of the evidence claim simply because the federal court disagrees with

the state court's resolution of that claim.  Instead, a federal court may grant

habeas relief only if the state court decision was an objectively unreasonable

25

application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).

"Because rational people can sometimes disagree, the inevitable consequence of

this settled law is that judges will sometimes encounter convictions that they

believe to be mistaken, but that they must nonetheless uphold." *Id.*  For a federal

habeas court reviewing a state court conviction, "the only question under

*Jackson* is whether that finding was so insupportable as to fall below the

threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A

state court's determination that the evidence does not fall below that threshold is

entitled to "considerable deference under [the] AEDPA." *Id.*

> Under Michigan law, the elements of first-degree felony murder are:
>
> (1) the killing of a human being;
>
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
>
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003)(citing *to People v.*

*Carines*, 460 Mich. 750, 759; 597 N.W.2d 130 (1999)).

The Michigan Supreme Court indicated that: "[A] jury can properly infer

malice from evidence that a defendant set in motion a force likely to cause death

or great bodily harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304

(1980); *see also Carines,* 460 Mich. at 759 (internal citation omitted).  "Malice

may also be inferred from the use of a deadly weapon." *Carines,* 460 Mich. at

759.

The elements of armed robbery under Michigan law are: (1) an assault,

and (2) a felonious taking of property from the victim's presence or person, (3)

while the defendant is armed with a weapon. *See O'Guin v. Foltz,* 715 F.2d 397,

400 (6th Cir. 1983).

Mich. Comp. Laws § 750.110a(2) states that:

> A person who breaks and enters a dwelling with intent to commit a
> felony or a larceny in the dwelling or a person who enters a dwelling
> without permission with intent to commit a felony or a larceny in the
> dwelling is guilty of home invasion in the first degree if at any time
> while the person is entering, present in, or exiting the dwelling either
> of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
> (b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all of the elements

of burglary of a dwelling, but also requires that the defendant be armed with a

dangerous weapon and/or that the dwelling be occupied. *See Johnson v.*

*Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(citing *United States v.*

*Garcia-Serrano,* 107 F. App'x 495, 496-97 (6th Cir. 2004)).

The Michigan Court of Appeals' rejection of petitioner's sufficiency of

evidence claim was reasonable.  Petitioner's act of bringing a loaded firearm to

an armed robbery and/or home invasion and using it while attempting to take

property from the victim was sufficient evidence for a rational trier of fact to

conclude that petitioner acted with the requisite malice to support his first-degree felony murder conviction.

A defendant's participation in an armed robbery or another crime, while either he or his co-defendants are armed with a loaded firearm, manifests a wanton and reckless disregard that death or serious bodily injury could occur, to support finding that the defendant acted with the malice aforethought element of first-degree felony-murder. *See Hill v. Hofbauer,* 337 F.3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."). *See also People v. Carines,* 460 Mich. at 759-60; *Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*; People v. Turner,* 213 Mich. App. 558, 572-73; 540 N.W.2d 728 (1995)*;overruled in part on other grounds People v. Mass,* 464 Mich. 615; 628 N.W.2d 540 (2001); *People v. Hart*, 161 Mich. App. 630, 635; 411 N.W.2d 803 (1987); *Meade v. Lavigne,* 265 F. Supp. 2d 849, 858-59 (E.D. Mich. 2003); *Cf. Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003)(petitioner not entitled to tolling of the AEDPA's statute of limitations on a claim that he was actually innocent of felony-murder, finding that petitioner's act of providing a firearm to be used in an armed robbery demonstrated a wanton and willful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery).

The mere fact that the gun discharged after the victim reached for it in an attempt to disarm petitioner does not negate the malice.  When petitioner

28

committed the armed robbery, "he took the risk that [the victim] might exercise [his] natural right of self-preservation." *People v. Anderson*, 147 Mich. App. 789, 793; 383 N.W.2d 186 (1985). When viewed in a light most favorable to the prosecution, the evidence established that petitioner acted with the requisite malice aforethought so as to support his conviction for first-degree felony murder. Petitioner is not entitled to habeas relief on his eighth claim.

### G. Claim # 9. The prosecutorial misconduct claim.

Petitioner next contends that the prosecutor committed misconduct by vouching for the credibility of Mr. Jones.

A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999)(internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000). Indeed, "[T]he Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process." *Wilson v. Bell*, 368 F. App'x 627, 632, n.3 (6th Cir. 2010). Even on direct appeal from a federal conviction, to constitute reversible error, a prosecutor's alleged misconduct of arguing his or her personal belief, in a witness' credibility or in a defendant's guilt,

30

must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

In this case, the prosecutor did nothing more than argue for Jones' credibility based on the evidence at trial.  Petitioner challenges portions of the closing and rebuttal arguments made by the prosecutor, however, the prosecutor's comments were made in the context of the other evidence. (ECF No. 15-11, PageID.439-443, 446-47).  The prosecutor put Jones' testimony in context, e.g., "That is physical evidence that is independent of Shaquille Jones that corroborates Shaquille Jones' testimony." (*Id.*. PageID.439).

The prosecutor did not argue that he had any special knowledge about Mr. Jones that had not been presented to the jury.  There was no improper vouching because the prosecutor did not improperly "assert or imply that he drew from anything but [Mr. Jones'] trial testimony to argue that [he] was credible." *Cockream v. Jones*, 382 F. App'x 479, 485 (6th Cir. 2010).  Petitioner is not entitled to relief on his ninth claim.

### H. Claim # 6.  The ineffective assistance of appellate counsel claim.

Petitioner lastly contends that he was denied the effective assistance of appellate counsel for failing to raise his first through fifth and ninth claims on his appeal of right.

Petitioner was represented by the State Appellate Defender Office, who filed a brief raising what make up petitioner's seventh, and eighth claims, as well

31

as another claim not included in the current petition. (ECF No. 15-19, PageID.657-696).

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016)(per curiam)("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Petitioner's first through fifth and ninth claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner is not entitled to relief on his sixth claim.

## IV. Conclusion

The Court denies the petition for a writ of habeas corpus.

28 U.S.C. § 2253(c)(1)(A) and F.R.A.P. 22(b) state that an appeal from the district court's denial of a writ of habeas corpus may not be taken unless a certificate of appealability (COA) is issued either by a circuit court or district court

judge.  If an appeal is taken by an applicant for a writ of habeas corpus, the

district court judge shall either issue a certificate of appealability or state the

reasons why a certificate of appealability shall not issue. F.R.A.P. 22(b).

In order to obtain a certificate of appealability, a prisoner must make a

substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

To demonstrate this denial, the applicant is required to show that reasonable

jurists could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were adequate to

deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473,

483-84 (2000).  When a district court rejects a habeas petitioner's constitutional

claims on the merits, the petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims to be

debatable or wrong. *Id.*

In order to obtain a certificate of appealability, a habeas petitioner need not

show that his appeal will succeed. *Miller-El v. Cockrell,* 537 U.S. 322, 337 (2003).

The Supreme Court's holding in *Slack v. McDaniel* "would mean very little if

appellate review were denied because the prisoner did not convince a judge, or,

for that matter, three judges, that he would prevail.  It is consistent with § 2253

that a COA will issue in some instances where there is no certainty of ultimate

relief." *Id.*  A habeas petitioner is not required to prove, before obtaining a COA,

that some jurists would grant the petition for habeas corpus. *Id.* at 338.  "Indeed,

a claim can be debatable even though every jurist of reason might agree, after

33

the COA has been granted and the case has received full consideration, that petitioner will not prevail". *Id.*

As this Court has previously indicated: "[T]he Court's ego tells it that all reasonable jurists would agree with its resolution of the issues raised by petitioner.  The Court's experience, however, is to the contrary.  Thus, the Court's belief in the correctness of its decision should not insulate that decision from further review." *Hargrave v. McKee,* 2005 WL 1028183, *1 (E.D. Mich. April 25, 2005)(citing *Taylor v. Howes*, 26 F. App'x 397, 399 (6th Cir. 2001)).

"[B]ecause the Court is not infallible and does not believe that its decision should be insulated from further review," *Id.,* a certificate of appealability shall issue in this case.  In addition, any doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F.3d 250, 253 (5th Cir. 2004).  Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the nonparolable life sentence that he is serving.

A court may grant *in forma pauperis* (IFP) status if it concludes that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).  Good faith requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Id.*  Because this Court granted a certificate of appealability, petitioner's appeal is being undertaken in good faith;

34

petitioner is thus GRANTED leave to appeal *in forma pauperis*. *See Brown v.*

*United States,* 187 F. Supp. 2d 887, 893 (E.D. Mich. 2002).

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that:

(1)  the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

(2)  Petitioner is **GRANTED** a certificate of appealability and leave to appeal *in forma pauperis.*


Dated: November 29, 2021

         s/Arthur J. Tarnow

ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE